STANDEFER, Claimant, *versus* CHISHOLM, Plaintiff in Error.

It is a rule, applying to conveyances, both of real and personal property, that where a legal and equitable title are united, the latter is merged in the former. So, a *cestui que trust*, for whose security a trust deed has been executed, may take an absolute *bona fide* conveyance of the trust estate, and the latter becomes merged in the former.

Where the interest of a defendant in execution is perfectly balanced between the claimant and plaintiff, he is a competent witness for either party, and must be produced; and evidence of his declarations, is not admissible.

The gratuitous declarations of an agent, as to the ownership of property entrusted to his charge, are not evidence: if competent, he must be produced in person.

This was a proceeding in Madison Circuit Court, to try the right of property in certain slaves, levied on as the estate of Skelton Standefer, to satisfy subsisting executions in favor of the defendant in error.

So much of the extensive testimony as related to the decision in this cause, shewed the following facts. Before the judgments had been obtained, under which Chisolm's executions were levied, Skelton Standefer, to secure and indemnify Jesse Standefer against extensive liabilities, as a surety, executed a deed of trust of the slaves, jointly to the said Jesse Standefer and one William Patton. Patton was authorised alone, by the tenor of the deed, to dispose of the slaves whenever it became necessary for the security of Jesse Standefer. Some months thereafter, Skelton Standefer conveyed the same slaves, by absolute bill of sale to Jesse Standefer, and delivered them into his possession. The latter having employed one Samuel W. Standefer as his agent, sent the slaves out of the State, when they were hired as Jesse Standefer's property, for some time. On the return of the slaves to this State, Samuel W. Standefer became the assignee of the judgments against Skelton Standefer, and caused the present executions to be levied on the slaves in question.

On the trial below, it was proposed, with other testimony, to admit the declarations of Skelton Standefer to be given in evidence to the jury. These declarations did not appear to be relèvant, nor was Skelton Standefer a party to the present proceeding.—— The Court, however, admitted the evidence. The claimant then offered in testimony the declarations of Samuel W. Standefer, while agent, as to the ownership of the slaves; which was rejected. The Court then charged the jury, that the deed of trust executed by Skelton Standefer in the first instance, divested him of the legal title to the slaves, and that, consequently, he was precluded from subsequently convey-

ing them by absolute deed of sale to Jesse Standefer; and that that deed of trust not having been acknowledged by the parties, and recorded, was void, so far as the plaintiff in execution was concerned. The jury found the property subject to the executions, and the charge of the Court, together with its decision as to the declarations of Skelton Standefer and Samuel W. Standefer, being excepted to—it was assigned to this Court as error.

1st. That the Court erred in admitting the declarations of Skelton Standefer to go to the jury.

2d. That the Court erred in excluding the declarations of Samuel W. Standefer.

3d. That the Court erred in its charge to the jury.

*Ormond* and *Thornton*, for Plaintiff.
*Hopkins* and *McKinley*, contra.

SAFFOLD, J.—Executions having issued in favor of the defendant in error, against Skelton Standefer, the brother of the plaintiff in error, they were levied on slaves, in the possession of said Jesse Standefer, as the property of the defendant in execution. Prior to the rendition of the judgments, Skeleton Standefer had, by deed of trust, conveyed the slaves to Jesse Standefer and William Patton, in trust, to indemnify and secure the former against responsibility to a large amount, which he had contracted as security to said Skelton Standefer. The conveyance was to J. Standefer and Patton jointly, but with authority to the latter alone, to sell the slaves in the manner prescribed, if found necessary, for the indemnity of the former. More than twelve months thereafter, but previous also, to the date of the judgments, Skelton

Standefer executed his absolute bill of sale, and thereby conveyed the negroes to Jesse Standefer, and delivered them to him accordingly. It was also shewn in evidence, that on Jesse Standefer's taking possession of the slaves, by virtue of the absolute conveyance as aforesaid, he procured Samuel W. Standefer to carry them to the state of Mississippi, as his agent, where they remained on hire as the property of the claimant, Jesse Standefer, for a considerable time, and until, through the continued agency of Samuel W. Standefer, they were brought back to this state, and again taken possession of by Jesse Standefer, residing in Madison county. In the mean while, however, Samuel W. Standefer had, by transfer and assignment become the proprietor of the judgments in favor of Chisholm: executions on these judgments were then levied on the negroes. These facts, and others referred to by the assignments of error, appear from the exceptions taken on the trial. Jesse Standefer having claimed the property according to statute, issue was joined between him and the plaintiff in execution, to try the right. The trial resulted in a verdict, finding the slaves to be the property of Skelton Standefer, the defendant in the executions, and subject thereto. From the judgment thereon, the claimant prosecuted this writ of error, and assigns as causes:

1. The Court erred in admitting the evidence of R. Manefee and B. Manefee, respecting the declarations of the defendant in execution, to go to the jury, the same being objected to by the claimant's counsel.

It is not contended that these declarations constitute any part of the *res gesta*, or that the persons making them were a party to the suit; but it is in-

sisted by the counsel for the defendant in error, that the contest involved an alleged fraud, in which he was implicated, and that there was a community of interest and design between him and the claimant. It is admitted to be a correct legal position, " that a community of interest or design, will frequently make the declaration of one, the declaration of all."[a] It is so with respect to partners, and makers of joint and several promissory notes, and some other joint responsibilities; but it is not believed that the doctrine has ever been, or can safely be so far extended as to identify several persons on the ground alone, that they are supposed to have participated in practicing fraud. A conclusive objection to this course would be, that the judge would be reduced to the necessity of arrogating to himself the right of determining the fact that a fraud had been committed before he could determine the admissibility of the testimony. This he is incompetent to do, for the declarations of one in this situation might be the first evidence offered, or there might be no other: besides, if, before such testimony should be offered, there be proof of the most glaring fraud, it is the exclusive province of the jury to determine its effect; and before they can do so, all the evidence must be before them, and it must have been closed. It may also be remarked, that if the defendant in execution was a competent witness for the party who offered proof of his declarations, that consideration alone furnishes a sufficient objection to the secondary evidence.

It is certain, the defendant in execution was not entirely indifferent as to the result of the trial. If the property be condemned, it must be sold for the

[a] 2d Stark. ev. 45.

satisfaction of his debt—the consequence of which must be, a breach of his warranty of title to the claimant, to whom he had conveyed. If the claimant prevail, his warranty of title, (whether express or implied,) is sustained, and the debt remains unsatisfied against him  His interest would, therefore, appear to be balanced. To disqualify a witness on the ground of interest, it must be a *legal* interest in the event of the suit, or in the record, as contradistinguished from mere prejudice or bias, arising from the circumstances of relationship, friendship, or any of the numerous motives by which a witness may be supposed to be influenced."[a]

[a]2 Starkie's Ev. 745.

Where a witness is neutralized by an equipoise of interest, the objection to his testimony ceases; but if he is subject to conflicting interests, one of which preponderates, the difference constitutes an interest which is not countervailed. "The preponderance must, however, in order to disqualify the witness, be certain and definite; for, although it has been held that a witness was incompetent, because it would, in one event, be more difficult for him to recover the same sum of money, than in the other—*Buckland vs. Tankard*[b]—yet the principle of this decision is very dubious, and probably would not now be supported."[c]

[b]5 T. Rep. 578.

[c]2 Starkie's Ev. 753.

We are, therefore, of opinion, from the rules of evidence stated, and from the authorities referred to, in the brief furnished by the claimant's counsel, that the declarations offered in evidence were inadmissible, and that the defendant in execution, in the situation in which he stood in relation to each party, was himself a competent witness for either.

2nd Assignment—The Court erred in excluding the declarations of Samuel W. Standefer, who was,

when they were made, acting as the claimant's agent; and afterwards became the owner of the judgments in Chisholm's name.

The evidence here referred to, as having been offered and rejected, is understood to be the part of W. H. Brewer's deposition, in which he states, that having seen Samuel W. Standefer in the state of Mississippi in 1823, in possession of the negroes, &c., he told him those negroes belonged to his uncle Jesse Standefer, and that he had bought them of his father, Skelton Standefer; that as his father was involved, his uncle was suspicious if he kept them at home, he would have a troublesome law suit about them, and therefore had employed him to hire them out in that country until his uncle would move there, and by so doing, his uncle would avoid all danger of any suit. The record states, that the Court sustained the motion to exclude from the jury the statements contained in said depositions, in relation to the acknowledgments of Samuel W. Standefer, that the property in the slaves in controversy belonged to the claimant; from which it is inferred that evidence of the gratuitous declarations of the agent respecting the ownership of the property was excluded, not the evidence of his being in possession of the slaves, nor of any particular act done, or contract made concerning them. The latter might be viewed as substantive acts of ownership for his principal, and rest on grounds entirely different from the former. Previous to the time, or independent of the fact of the agent having acquired an interest in the judgments, it is clear that his declarations respecting the ownership of the property, or any contract made by others concerning it, could not have been evidence for his prin-

cipal. As a general rule, agents, factors, servants, and others in a similar condition, are competent witnesses for either party. In many instances they are indifferent, having no interest in the contest, or if they have, their interest is paralized. But the law, from the necessity of the case, does not stop here. Persons acting in such capacity are rendered competent as witnesses in relation to acts done by them, according to the directions of their principals in the usual course of business : such is the rule, though they be responsible to the party calling them, or the adversary, unless the action be brought against the principal for the negligence of the agent, and evidence has been given of such negligence ; then the agent is, in general, incompetent, without a release; for there, the verdict against the principal would be evidence in an action brought by him against the agent.[a]

Then can the circumstance of the agent having contracted an interest in, or become the owner of the judgments, destroy his competency as a witness for the claimant, or constitute him a party so as to make his declarations evidence for the other. The law is held to be, that " a witness can not, by the subsequent voluntary creation of an interest, without the concurrence or assent of the party, deprive him of the benefit of his testimony in any proceeding, whether civil or criminal ; for the party had a legal interest in the testimony, of which he ought not to be deprived by the mere wanton act of the witness."[b] And according to the doctrine advanced under the first assignment, he can not be regarded as a party for the purpose of making his admissions evidence. Without the newly acquired interest, they would not have been evidence for his principal, more than admissions

[a] 2 Stark. 768-9.

[b] 2 Stark. Ev. 751. 3 Johnsons Cas. 234.

of the latter for himself. And while the law denies to the agent the power of depriving his principal of the benefit of his testimony, by contracting an adverse interest, it equally denies the principal the right to claim, from that circumstance, as evidence, what otherwise would not have been. In general, we must look to the record alone, for the *parties* to the suit, and all others are competent witnesses, unless interested in favor of the party calling them. Hence it results, that the claimant must exercise his discretion to introduce his former agent as a witness, or dispense altogether with the testimony.

3d Assignment—The Court erred in the instruction given to the jury, as to the effect of the deed of trust to Patton.

The instructions referred to are, that the Court charged the jury—that the deed of trust from Skelton Standefer to William Patton, divested Skelton of his legal title to the slaves, and disabled him to convey them by the bill of sale which he afterwards made to Jesse Standefer, the claimant; that the said bill of sale, on account of that disability, conveyed no legal title to the slaves, and that the deed of trust not having been acknowledged by the parties, and recorded, was void as to the plaintiff in execution.

The exception respecting the former acknowledgment of the deed of trust, and having it recorded within a *limited* time, not having been here particularly urged, it is sufficient to remark, that it can have no material influence on this decision, and that according to the doctrine in *Kelloughs vs. Steel*, of the present term, such instruments are not required to be recorded by the statute of frauds, or any of the registry acts, existing at the execution of this deed.

But did the existence of the deed of trust deprive Skelton Standefer, the grantor, of the power, subsequently, to make the absolute conveyance of the same property to the *cestui que trust.* It will be observed, if material, that the conveyance in trust was to Patton and Jesse Standefer, with authority to the former, if necessary, to sell for the benefit of the latter. The absolute conveyance having been made between Skelton and Jesse Standefer, the consent of each must have been united in the deed, and so far as they were concerned, it could amount to nothing else than a rescision of the former conditional conveyance. Then could the trustee, or under his silence, any other, on account of his supposed legal title, object to the validity of the absolute conveyance. The argument, that possibly the trustee was vested with some distinct interest in the trust property; that there may have been a collateral agreement to that effect, and that he may have an individual lien on the property, accruing from his agency, can not influence the question; because the facts do not appear, and we are not authorised to presume them.

[a] 6 John. C. R. 417.  The case of *James vs. Johnson,*[a] furnishes authority favorable to the plaintiff in error. It was there held, in reference to lands, that where the legal and equitable titles are united, the latter is merged in the former; that if a mortgagee takes a release of the equity of redemption, the whole estate is vested in him, and the mortgage discharged. This is held to be the general rule both in law and equity; and in equity the merger is prevented, and the distinction of estates preserved, *in special cases only,* as in case of infants,

or others in similar condition, whose beneficial interest requires it.

Without adding other references in support of the same doctrine, which might be done, it is sufficient to say, the above is believed to be the true principle, and that it applies equally to conveyances both of real and personal estate; and that, as the absolute conveyance, united the consent of all who had any beneficial interest in the trust conveyance, neither a mere trustee, or any other, can deny its validity on that ground alone. If the subsequent sale was made for a fraudulent purpose, it was the province of the jury so to pronounce. We are, therefore, of opinion, that according to the first and third assignments, the Circuit Court erred; for which the judgments must be reversed, and the causes remanded for new trials.

The case of *Standefer vs. Mastin*, being similarly situated, must take the same course.

TAYLOR, J. not sitting.